Nader Mobargha (NM7162)
**Beys, Stein & Mobargha LLP**
The Chrysler Building
405 Lexington Avenue
7th Floor
New York, NY 10174-0700
(212) 387-8200
*Attorneys for Plaintiff John Doe*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE,<br><br>                    Plaintiff,<br><br>v.<br><br>JOSHUA BERNSTEIN<br>                    Defendant. | 10 CIV 9658 (NRB) ECF<br><br>**COMPLAINT** |

Plaintiff John Doe ("Doe"), by his undersigned attorneys, brings this action against Defendant Joshua Bernstein ("Bernstein"), and alleges as follows:

**PRELIMINARY STATEMENT**

1.   This case is about stealing. But it is no ordinary theft. Defendant Joshua Bernstein stole property whose value is measured not in dollars, but in the amount of harm it could cause to Plaintiff and others if disseminated. Bernstein stole private and confidential documents belonging to John Doe, which contained highly sensitive information (the "Private and Confidential Documents"). He then provided these documents to his co-conspirators, who by threatening to disseminate them, have attempted to extract millions from Doe, his former company, and multiple other businesses. The theft and public disclosure of the Private and Confidential Documents have also placed Doe and his family at great personal risk and caused them distress.

2.     For much of the last decade, Doe and Bernstein worked together at a real estate investment company called the Bayrock Group ("Bayrock" or the "Company"), Doe as a senior employee, and Bernstein as a junior analyst with minor information technology ("IT") responsibilities. Bernstein suspected that Doe had confidential information which could prove to be extremely valuable as leverage against Doe and Bayrock, and Bernstein was determined to obtain it.

3.     To further this end, Bernstein illegally and without authorization installed spyware software on Bayrock's computer system. The spyware provided access to the most private computer files of every Bayrock employee, including Doe, his primary target. Either through this spy campaign – or through an old-fashioned break-in to Doe's locked drawer in his office – Bernstein discovered exactly what he was looking for: The Private and Confidential Documents. After discovering these documents, he then stole them.

4.     Armed with the Private and Confidential Documents, Bernstein and his co-horts hatched a scheme to make millions. They threatened to publicly disclose the Private and Confidential Documents in a lawsuit against Doe, Bayrock and multiple other defendants (including law firms and accounting firms) unless Doe paid them - or persuaded the other defendants in the lawsuit to pay them - a king's ransom in excess of $100 million. His co-conspirators included Jody Kriss ("Kriss"), another disgruntled ex-employee of Bayrock, Michael Ejekam, a member of Bayrock, and Fred Oberlander ("Oberlander"), an unscrupulous attorney. Their true goal – and the reason for suing the law firms, accounting firms, and an insurance carrier – was to force the insurance carriers to cut a big check to make the lawsuit go away.

5. When the parties refused to comply with the conspirators' demands, Oberlander did the unthinkable: He publicly filed the complaint, which contained numerous references to the Private and Confidential Documents, and even attached the documents as exhibits to the complaint.

6. The brazen theft and disclosure of these documents have placed Doe and his family at great personal risk. It has also forced Doe to spend over $300,000 in legal fees to retrieve the documents and restore their confidentiality.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331, as a civil action arising under the laws of the United States, as well as supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367.

8. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), as Defendant Bernstein resides in this district, and under § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

9. Plaintiff John Doe is a natural person and resident of New York County. John Doe is a former employee of Bayrock.

10. Defendant Joshua Bernstein is a natural person and resident of Westchester County. Bernstein is a former employee of Bayrock.

## FACTUAL BACKGROUND

*Bayrock hires Bernstein as a financial analyst and as its primary contact for IT services*

11.  Bayrock is a real estate investment and development firm specializing in luxury residential, commercial and mixed-use condominium projects and has developed real estate throughout the United States.

12.  John Doe was a senior employee at Bayrock.

13.  Bernstein was a former full-time employee of Bayrock from November 2006 through September 2008. Bernstein's responsibilities at Bayrock were two-fold. Bernstein's primary responsibility was to serve as a financial analyst and to assist in the identification and procurement of real estate opportunities for Bayrock. Bernstein's secondary responsibility was to serve as the primary contact to the outside firms hired by Bayrock to provide information and technology (IT) support services. It was the latter role that he would ultimately exploit to gain access to the Company's – and Doe's – highly personal and sensitive information.

14.  Bayrock employees used the computer system to conduct real estate business, including interstate and foreign commerce.

*Bernstein is unpopular at Bayrock*

15.  During his tenure at Bayrock, Bernstein was not at all popular with Bayrock employees and executives. He had a reputation as a "snoop," with a habit of sticking his nose into other people's businesses, gathering information about them, and gossiping behind their backs. Multiple Bayrock employees can corroborate this fact.

16.  Despite his unpopularity, he did manage to become extremely close with one Bayrock employee, Jody Kriss, who was an employee and member of Bayrock from 2003 through 2008. In 2008, Kriss served as Bayrock's Chief Financial Officer ("CFO"). Doe also

knew Kriss from the days when Kriss worked for Doe as an analyst at another company. Subsequently, Doe hired Kriss to work at Bayrock.

17. Bernstein and Kriss spent an inordinate amount of time together. Indeed, they worked long hours together, worked out together, and chatted incessantly with each other behind closed doors.

18. Bernstein and Kriss shared something else in common: Both knew that Doe had highly confidential and sensitive information – and, most likely, written records of that information - whose value as an extortionate tool was immeasurable.

**Bernstein's begins an electronic spy campaign**

19. In July 2007, Bernstein found the perfect opportunity to obtain the information he was searching for.

20. At this time, Doe had asked Bernstein, Bayrock's primary contact to outside IT support vendors, to provide an additional back-up system of Bayrock's back-up hard drive. Rather than follow these simple instructions, Bernstein illegally and without authorization asked Greenhouse IT, Bayrock's outside IT support vendor, to install a spyware program known as Specter CNE on Bayrock's computer system. Bernstein himself signed the purchase order for the spyware installation – the only time Bernstein had ever authorized any work order – and did not copy any other Bayrock employee or management on his communications with the installing vendor. Even after Bernstein installed the spyware, he failed to notify Doe or anyone else at Bayrock about it. This is because his motive for installing the spyware was to gain information for his own purposes, not to further the interests of Bayrock. Bayrock did not discover that it was Bernstein who installed the spyware until early 2010.

21. The spyware enabled anyone with administrator access – namely, Bernstein himself – to view (including remotely), download and record the screens, emails, files and keystrokes of any workstation, including those of Doe, his prime target. Under oath, Bernstein has admitted that he regularly downloaded files and emails of "various users" from the hard drive in his office and Bayrock's server.[1] Bernstein's actions, however egregious, were not surprising. Indeed, they were consistent with his reputation as a "snoop." And now that he had a specific target, his "snooping" increased substantially.

**Bernstein discovers Doe's Private and Confidential Documents and then steals them.**

22. Through this electronic spy campaign, Bernstein could have easily "seen" the Private and Confidential Documents on Doe's hard drive or on his email system, and illegally downloaded them.

23. Alternatively, Bernstein also could have stolen the Private and Confidential Documents the old-fashioned way: by stealing hard copies from Doe's office. In that scenario, Bernstein would have waited for an opportunity when Doe was absent from his office and then rifled through his office, picked the locked drawer (where Doe kept his personal documents), found a file labeled "Personal and Confidential" containing the Private and Confidential Documents, copied them, and returned them to their original place.

24. Whether it was accomplished through his electronic spyware campaign or through an old-fashioned break-in – or both – one thing is certain: Bernstein stole Doe's Private and Confidential Documents and was fully aware that he had no right to take them. The highly sensitive and confidential nature of these documents was evident on their face. And even if it

---

[1] Bernstein was deposed about his electronic spy campaign in a separate lawsuit, *Joshua Bernstein v. Bayrock Group, LLC*, Index No. 02579/09, in New York Supreme Court, Westchester County.

was not, a cursory glance through the documents would have apprised anyone of their highly sensitive and confidential nature. Rather than deterring Bernstein from taking these documents, however, the confidential and sensitive nature of these document only prompted him to capitalize on the golden opportunity. After all, the more sensitive and confidential the documents were, the more leverage Bernstein would have over Doe and Bayrock.

25.     In addition, on December 26 and 27, 2007, Bernstein, or someone at his direction, scanned the Private and Confidential Documents into electronic format.

*Upon his departure from the Company, Bernstein steals thousands of documents*

26.     Nine months later, in or around September 2008, Bayrock terminated Bernstein's employment. However, Bernstein did not leave without first stealing the hard drive from the Bayrock-owned computer in his office. Bernstein also took "thousands" of emails and "hundreds" of paper documents - facts that Bernstein has admitted under oath. Among the documents and information taken by Bernstein were documents that are highly sensitive, confidential, and proprietary, including but not limited to:

    (i)     Bayrock financial information;

    (ii)    information about potential deals or investments;

    (iii)   private emails and other personal documents or information belonging to Bayrock employees, including Doe; and

    (iv)    privileged attorney-client communications.

Bayrock did not discover the installation of spyware or Bernstein's theft of Company information and equipment until 2010, almost a year and half after Bayrock terminated him.

27. Shortly before terminating Bernstein, in July 2008, Bayrock terminated Kriss, Bernstein's co-conspirator, after they caught him red-handed reading another Bayrock employee's emails.

28. After their termination, both Kriss and Bernstein were now looking for a big pay-day from Doe and Bayrock. And thus began their legal extortion campaign.

***Kriss files a lawsuit against Bayrock and Doe in Delaware Chancery Court, which is dismissed***

29. In the fall of 2008, Kriss sued Bayrock and Doe in Delaware Chancery Court (*Jody Kriss* v. *Bayrock Group, LLC et al.*, C.A.No. 4152-VCS)(the "Delaware Action"). Fred Oberlander was one of Kriss's lawyers in the Delaware action.

30. In the Delaware Action, Kriss alleged, among other things, that the Bayrock entities constituted a racketeer influence and corrupt organization (RICO), that tax laws had been violated, and that Kriss – who ironically had been the CFO at the time of the alleged violations – had been denied certain economic benefits to which he was entitled based on his association with Bayrock. Vice Chancellor Leo E. Strine, Jr. dismissed the Delaware Action, finding, among other things, that Kriss's dispute with Bayrock and the other defendants is the subject of an arbitration agreement.

***Bernstein files a lawsuit against Bayrock, which is also dismissed for the most part***

31. In February 2009, it was time for Bernstein to play his extortionate hand. He sued Bayrock in Westchester County (*Joshua Bernstein* v. *Bayrock Group, LLC*, Index No. 02579/09)("Westchester Action") alleging that Doe, and by extension Bayrock, failed to deliver on their "promise" to give him bonuses, money, a college education, a watch, and a membership to a beauty salon, and to reimburse him for some travel expenses. As in the Delaware Action, all the claims in the case were summarily dismissed except for the reimbursement claim. The case

had no merit, but the merits were not Bernstein's and Oberlander's concern, which became apparent during discovery. Indeed, Oberlander took the opportunity to depose Doe and Julius Schwarz, the general counsel and an executive officer of Bayrock, about matters that had nothing to do with the Westchester Action. Instead, Oberlander used the depositions to fish for information for another, more sensational case that he would later bring against Doe, Bayrock, and multiple other parties.

### After their cases are dismissed, Bernstein and Kriss publicly disclose the Private and Confidential Documents

32. Although Bernstein and Kriss were no doubt tempted, they did not physically attach or produce any of the Private and Confidential Documents in either the Delaware or the Westchester actions. Whatever their reasons for withholding the documents, after both actions were dismissed, Bernstein and Kriss realized that the use of these documents in a public litigation was their only path to a cash settlement offer. They knew that disclosure of such information would pose a great personal risk to Doe and his family and cause them great distress, but that worked in their favor. They believed that, with such a threat looming, Doe would have no choice but to pay them, or persuade others to pay them, to make the lawsuit go away permanently. Now they just needed someone to connect the legal dots for them. So Kriss and Bernstein sought the assistance of Oberlander, the attorney who had represented both of them in the two previous actions, and had already shown a willingness not to play by the rules.

33. Even before his representation of them in the Delaware and Westchester Actions, Oberlander was no stranger to Kriss or Bernstein. Indeed, Michael Ejekam, a member of Bayrock, and a long-time business partner of Oberlander, had introduced Kriss to Oberlander years earlier. Oberlander and Kriss then began a working relationship that lasted for years.

34. Bernstein felt that it was time to show Oberlander the valuable gems that he had unearthed two years earlier. Thus, on Sunday, March 1, 2010 – just after midnight in an upper east side apartment – Bernstein handed the Private and Confidential Documents to Oberlander.

35. Two days later, on March 3, 2010, Bernstein emailed the Private and Confidential Documents to Oberlander so that Oberlander would also have a copy of them in electronic format. Oberlander has confirmed both events under oath.[2]

**Oberlander uses the Private and Confidential Documents to draft a complaint and attempts to extort Bayrock and Doe**

36. Armed with the Private and Confidential Documents and numerous privileged communications between Bayrock and its counsel (which Bernstein had also stolen), Oberlander drafted a rambling, 165-page, 785-paragraph complaint (the "Complaint") on behalf of both Kriss and Ejekam, his fellow co-conspirators.[3] The Complaint essentially accuses a group of Bayrock employees (including John Doe) and principals, accountants, law firms, and other corporate entities of a massive RICO conspiracy, with Doe's Private and Confidential Documents as the centerpiece, and demands a king's ransom. Although Bernstein was not officially named as a plaintiff, he is no doubt involved in the litigation since he was the one who stole the Private and Confidential Documents and provided his co-conspirators their most critical piece of leverage in their extortionate scheme. The Complaint is very similar to the complaint filed in the Delaware Action, except this time the plaintiffs <u>attached</u> the Private and Confidential

---

[2] Oberlander recently testified in a parallel proceeding about how he obtained the Private and Confidential Documents and to whom he disseminated them.

[3] Oberlander drafted <u>72</u> versions of the 165-page Complaint, which raises the specter that, despite only physically receiving the documents on March 1, 2010, Oberlander might have orally received detailed information from Bernstein concerning the Private and Confidential Documents prior to his drafting his final version of the Complaint.

Documents as exhibits and disclosed intricate details from these documents in the Complaint, all in an effort to extort a quick cash settlement from Doe, Bayrock, and others.

37. Oberlander made no secret of his extortionate plan. Indeed, on May 10, 2010, Oberlander sent an email to Ronald Kriss – Bayrock's former counsel, a partner at the law firm of Akerman Senterfitt and the father of Jody Kriss – attaching the Complaint and its confidential exhibits, and threatening to go public with everything if Doe and Bayrock did not comply with his demands. Specifically, Oberlander stated as follows:

> I recommend you forward this to Julius[4] with the comment from me that there are three alternatives here:
>
> (a) I file publicly today
>
> (b) I file under seal today
>
> (c) He arrange a tolling agreement with EVERY defendant but nixon peabody.
>
> I don't care how many people he has to get on the phone and how fast he has to work. He had years to give back the money and now it's over. He can get Brian Halberg to help him.
>
> I believe it's possible to get this in under seal if Bayrock joins in a joint motion in part 1 to seal the complaint pending a redaction agreement with the assigned judge but there are never any guarantees.
>
> Thanks,
>
> FMO

38. It is unclear how many times Oberlander's email, containing the Complaint with the Private and Confidential Documents attached, was forwarded and to whom it was forwarded.

39. Oberlander and his fellow co-conspirators knew that Doe did not have millions to pay him or his co-conspirators. Yet, their true goal – and the reason for suing the law firms,

---

[4] "Julius" refers to Julius Schwarz, the general counsel and an executive officer of Bayrock.

accounting firms, and an insurance carrier – was to force the insurance carriers of these businesses to cut a big check to make the lawsuit go away.

40. After Doe and Oberlander refused to comply with his demands, Oberlander did the unthinkable: He filed his 165-page complaint, publicly attaching the Private and Confidential Documents as exhibits and officially placing Doe and his family at great risk (the "Civil Action").

*The federal judge in the Civil Action enjoins further dissemination of the Private and Confidential Documents and orders Oberlander to file a redacted version of the Complaint*

41. Upon Oberlander's filing the Complaint, the federal judge assigned to the Civil Action immediately recognized that publicly disclosing the Private and Confidential Documents was out of the question. Accordingly, the judge ordered that:

(i) no further dissemination of the Complaint and exhibits, or the information contained in them, be made pending further order of the Court;

(ii) plaintiffs' counsel (i.e., Oberlander) immediately contact all persons who have received a copy of the Complaint and inform them of the Court's order that there be no further dissemination of the Complaint, its exhibits, or the information contained in them, pending further order of the Court;

(iii) that the original Complaint be sealed pending further order of the court; and

(iv) that a redacted version of the original Complaint, redacting any references to the Private and Confidential Documents, be filed with the Clerk of the Court.

42. Unfortunately, before the order was issued, a paid online news service got wind of the Complaint and posted it on their website. Ultimately, the online news service removed the

Complaint from its website and sent a copy of the judge's order to each person who downloaded the Complaint. However, it is not known how many people downloaded the Complaint before the online news service removed it from its website.

***A federal judge in a parallel proceeding also enjoins the further dissemination of the Private and Confidential Documents and orders their return***

43. A federal judge in a parallel proceeding to the Civil Action (the "Parallel Proceeding") also recognized that the public disclosure of the Private and Confidential Documents was not an option, and issued a similar order, enjoining further dissemination of the documents. The judge also ordered a hearing to determine how the Private and Confidential Documents were obtained and to whom they had been disseminated (the "Evidentiary Hearing").

44. After the Evidentiary Hearing, the judge stated his opinion in no uncertain terms about what the record showed:

> Now, what happened, assuming that the documents were in John Doe's cabinet or in his desk, as they had a perfect right to be, they were his documents, and the documents were then wrongfully taken by Bernstein. <u>Mr. Bernstein is a converter</u>, Mr. Bernstein has no title to those documents, no legal right to those documents, to that tangible document, whether it would be a piece of paper, whether it be a gold ring or whatever it is, it was a tangible item which was converted, given the testimony that I have…

(emphasis added).

45. The judge also suggested that Oberlander's conduct might constitute conversion and a violation of a disciplinary rule:

> [i]t may be that there is some disciplinary rule, which might be applicable to Mr. Oberlander, who had documents which he knew or should have known may have been improperly obtained by Bernstein and passed onto him. It may be that there is some ethical principle, which should have precluded Mr. Oberlander from using those documents.

Complaint from its website and sent a copy of the judge's order to each person who downloaded the Complaint. However, it is not known how many people downloaded the Complaint before the online news service removed it from its website.

***A federal judge in a parallel proceeding also enjoins the further dissemination of the Private and Confidential Documents and orders their return***

43. A federal judge in a parallel proceeding to the Civil Action (the "Parallel Proceeding") also recognized that the public disclosure of the Private and Confidential Documents was not an option, and issued a similar order, enjoining further dissemination of the documents. The judge also ordered a hearing to determine how the Private and Confidential Documents were obtained and to whom they had been disseminated (the "Evidentiary Hearing").

44. After the Evidentiary Hearing, the judge stated his opinion in no uncertain terms about what the record showed:

> Now, what happened, assuming that the documents were in John Doe's cabinet or in his desk, as they had a perfect right to be, they were his documents, and the documents were then wrongfully taken by Bernstein. <u>Mr. Bernstein is a converter</u>, Mr. Bernstein has no title to those documents, no legal right to those documents, to that tangible document, whether it would be a piece of paper, whether it be a gold ring or whatever it is, it was a tangible item which was converted, given the testimony that I have…

(emphasis added).

45. The judge also suggested that Oberlander's conduct might constitute conversion and a violation of a disciplinary rule:

> [i]t may be that there is some disciplinary rule, which might be applicable to Mr. Oberlander, who had documents which he knew or should have known may have been improperly obtained by Bernstein and passed onto him. It may be that there is some ethical principle, which should have precluded Mr. Oberlander from using those documents.

46. The judge ended on the following note: "Something bad was done, something very bad and perhaps despicable was done by the use of those documents annexed to a complaint in [the Civil Action]..." (emphasis added).

47. Finally, the judge issued an order directing Bernstein to return the Private and Confidential Documents.

***Bernstein refuses to comply with judge's order in the Parallel Proceeding***

48. Remarkably, to date Bernstein has not bothered to comply with the judge's unambiguous order in the Parallel Proceeding to return the Private and Confidential Documents to Doe. His lack of compliance is not surprising given his willingness to steal highly sensitive and confidential information, disclose its contents to the world, and place a man and his family at great personal risk.

49. Bernstein stole the Private and Sealed Documents for the sole purpose of gaining leverage over Doe and Bayrock and causing Doe and his family great distress. Indeed, these documents have no inherent monetary value aside from their use as an extortionate tool. Bernstein's delivery of the documents to Oberlander was deliberate: He knew that Oberlander would have no other use for the documents but to extort Doe and Bayrock in an effort to extract a quick cash settlement.

## FIRST CAUSE OF ACTION
### Computer Fraud and Abuse Act, 18 U.S.C. § 1030

50. The allegations in paragraphs 1 - 49 are incorporated herein.

51. The Bayrock computers accessed by Bernstein are all used in or affecting interstate or foreign commerce or communications, and are thus "protected computers" within the meaning of 18 U.S.C. § 1030.

52. Bernstein intentionally accessed one or more Bayrock protected computers without authorization or in excess of his authorization, and thereby obtained Doe's personal and confidential information from those computers, including but not limited to, the Private and Confidential Documents.

53. Bernstein knowingly, and with intent to defraud, accessed one or more Bayrock computers without authorization or in excess of authorization, and thereby obtained Doe's personal and confidential information from those computers, including but not limited to, the Private and Confidential Documents.

54. Bernstein knowingly caused the transmission of a program, namely, spyware, and as a result of such conduct intentionally caused damage without authorization to one or more Bayrock protected computers.

55. Bernstein intentionally accessed one or more Bayrock protected computers without authorization and, as a result of such conduct, recklessly caused damage and loss.

56. As a result, Bernstein violated 18 U.S.C. § 1030.

57. These violations caused Doe losses to be determined at trial.

## SECOND CAUSE OF ACTION
### Wiretap Act, 18 U.S.C. § 2510 *et seq.*

58. The allegations in paragraphs 1-57 are incorporated herein.

59. Bernstein intentionally intercepted or endeavored to intercept electronic communications of Bayrock and Doe as defined by 18 U.S.C. § 2510.

60. Bernstein intentionally disclosed or endeavored to disclose the contents of electronic communications of Bayrock and Doe, knowing or having reason to know that the information was obtained through interception of such communications in violation of the Wiretap Act.

61. Bernstein used or endeavored to use the contents of electronic communications of Bayrock, including the personal and confidential information of Doe and the Private and Confidential Documents belonging to Doe, with knowledge that the information was obtained through interception of such communications in violation of the Wiretap Act.

62. By the foregoing actions, Bernstein violated the Wiretap Act.

### THIRD CAUSE OF ACTION
### Stored Wire and Electronic Communications Act, 18 U.S.C. § 2701

63. The allegations in paragraphs 1 – 62 are incorporated herein.

64. The Bayrock computer system is a facility through which an electronic communications service is provided.

65. Bernstein intentionally accessed, without authorization or in excess of authorization, this facility and thereby obtained or altered electronic communications while in electronic storage.

66. By the foregoing actions, Bernstein knowingly or intentionally violated the Stored Wired and Electronic Communications Act.

### FOURTH CAUSE OF ACTION
### Conversion

67. The allegations in paragraphs 1- 66 are repeated herein.

68. Doe is the owner and entitled to immediate possession of all documents (whether electronic or hard copy) that Bernstein took from his office or from his computer, including but not limited to, the Private and Confidential Documents.

69. Bernstein took such documents wrongfully, illegally, without authorization from Doe, and he has no entitlement to possession of these documents.

70. Bernstein assumed dominion and control over such documents to the exclusion of Doe, and as a result, Doe has suffered damages.

## FIFTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress

71. The allegations in paragraphs 1 – 70 are repeated herein.

72. Bernstein stole Doe's Private and Confidential Documents, and then disclosed them to Oberlander, knowing that Oberlander would publicly disclose them in an effort to extort Doe.

73. Bernstein's theft and disclosure of the Private and Confidential Documents were extreme and outrageous because he knew that the highly sensitive and confidential information the documents contained would place Doe and his family at great personal risk and cause them distress.

74. By stealing the Private and Confidential Documents and providing them to others, Bernstein intended to cause Doe, or at the very least recklessly disregarded the substantial probability that it would cause Doe, severe emotional distress. Indeed, it was this very severe emotional distress that provided Bernstein the leverage against Doe that he was seeking.

75. As a direct cause of Bernstein's theft and public disclosure of the Private and Confidential Documents, Doe and his family have suffered severe emotional distress.

WHEREFORE, Plaintiff John Doe demands judgment against Defendant Joshua Bernstein as follows:

A. An order awarding possession to Doe of the Private and Confidential Documents, whether in paper or electronic form, taken by Bernstein and directing Bernstein and his agents to deliver such documents (and all copies of them), including any devices on which such documents reside, to Doe;

B. An order awarding to Doe all other documents and emails belonging to Doe, whether in paper or electronic form, taken by Bernstein and directing Bernstein and his agents to deliver such documents (and all copies of them), including any devices on which such documents reside, to Doe;

C. Actual damages in an amount to be determined at trial;

D. Damages in the amount of all legal fees Doe has incurred in the Civil Action and the Parallel Proceeding as a result of the filing of the Complaint in the Civil Action;

E. Statutory damages;

F. Punitive damages;

G. An accounting of any profits earned by Bernstein through his use of the documents or confidential information wrongfully taken from Bayrock;

H. Reasonable attorneys' fees and costs for bringing the present action; and

I. Such other and further relief as the court deems just and proper.

Dated: December 28, 2010
New York, New York

Respectfully submitted,

_____
Nader Mobargha (NM7162)

- 19 -